**RHODE ISLAND BROTHERHOOD OF CORRECTIONAL OFFICERS**

v.

**STATE of Rhode Island.**

No. 93–299–Appeal.

Supreme Court of Rhode Island.

June 23, 1994.

Gerard P. Cobleigh, Cogleigh, Sprague & Giacobbe, Warwick, for plaintiff.

Stephen Robinson, Asquith, Merolla & Robinson, Michael Grant, Dept. of Corrections, Warwick, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This appeal comes before us from the Superior Court on the denial of a motion by the Rhode Island Brotherhood of Correctional Officers (union) to confirm an arbitrator's award and the granting of a motion by the State of Rhode Island (state) to stay and vacate that award. We sustain the union's appeal and reverse the order of the Superior Court. The facts insofar as pertinent to this appeal are as follows.

## I

Anthony DiDonato (DiDonato) was employed by the Rhode Island Department of Corrections (department) as a correctional officer at the Medium Security Facility of the Adult Correctional Institutions. On March 24, 1992, DiDonato received a letter dated March 19, 1992, from the department's chief employee-relations officer, Barry S. Levin (Levin). The letter explained that DiDonato had been "Absent Without Leave" since December 29, 1991, and that if he failed to report for work by Wednesday, March 25, 1992, the department would "determine that you have resigned without notice."

Upon receipt of the letter, DiDonato called Levin and explained that he would be unable to return to work on that date for medical reasons. DiDonato stated that Levin told him that he would not lose his job if he provided doctors' notes before the end of the week. Levin also confirmed that he required DiDonato to send in a medical excuse "by the end of the week." After speaking with Levin, DiDonato stated that he placed a cover letter and the appropriate doctors' notes into an envelope. DiDonato's mother stated that she then put the envelope into a mail box at a post office shortly after 4 p.m. that day.

In a letter dated March 31, 1992, the director of the department informed DiDonato that because he had not reported to work "within the required time frame," he was "deemed to have resigned without notice." The letter explained that this action was taken pursuant to Rule 6.04 of the State of Rhode Island Personnel Rules & Regulations (November 1991), which was enacted pursuant to G.L.1956 (1990 Reenactment) § 36–4–8.[1]

DiDonato telephoned Levin when he received the director's letter and asked why this action had been taken even though he had forwarded the materials which Levin had requested. Levin informed him that the materials were not received in time.

On DiDonato's behalf, the union filed a grievance claiming that DiDonato was terminated in violation of its collective-bargaining agreement (CBA) with the state because the termination was without just cause. Because the grievance could not be resolved by the parties, it was submitted to arbitration.

In his decision and award the arbitrator determined as an initial question that the matter before him was both procedurally and substantively arbitrable because the grievance "clearly draws its essence from the Collective Bargaining Agreement of the parties." The arbitrator rejected the state's argument that because the termination was based on Personnel Rule 6.04, its grounds were independent of the CBA and were therefore not subject to the CBA's just-cause provision. He found that Levin's specific representation that Rule 6.04 would *not* apply if DiDonato sent in the appropriate documentation prohibited the state's invocation of the rule if DiDonato had complied. The determination of DiDonato's compliance thereby became a valid "grievance" under the CBA and was therefore arbitrable.

The arbitrator went on to find that Levin had represented to DiDonato that he would not be found to have "resigned without notice" if DiDonato sent in the medical documentation within the required timeframe. The arbitrator additionally found that the department normally date-stamps materials as they are received and that the materials are subsequently routed to the appropriate addressee. However, because the state had not presented any documentary evidence showing that the papers had not been received by the department within the required period, he found that DiDonato had provided the material as requested. The arbitrator then ordered that DiDonato be reinstated and that he be awarded back pay commensu-

---

1. General Laws 1956 (1990 Reenactment) § 36–4–8 authorizes the promulgation of personnel rules that "shall have the force and effect of law." These personnel rules shall apply to all "classified" employees, as defined in § 36–4–2, as amended by P.L.1992, ch. 133, art. 78, § 1. Rule 6.04 of the State of Rhode Island Personnel Rules & Regulations (November 1991) states:

"Any employee, who is absent from duty without authorized leave for five consecutive working days or who fails to resume his/her duties at the expiration of a leave of absence, shall be deemed to have resigned without notice."

rate with the proportion of regular-time and lost overtime opportunities which he had performed prior to his termination.

The union and the state filed cross-motions in the Superior Court—the union requesting the court to affirm the award and the state requesting the court to stay and vacate the award. After hearing arguments, the trial justice decided that DiDonato was terminated pursuant to the personnel rules and that those rules "have the [full] effect of law." The trial justice then determined that DiDonato's only route for review of his termination was by means of an appeal to the personnel appeals board and that no "grievance" under the CBA arose in the application of Personnel Rule 6.04. The trial justice therefore granted the state's motion to vacate the award and denied the union's motion to affirm.

## II

Pursuant to G.L.1956 (1986 Reenactment) § 28–9–18(a), upon application of an interested party, the Superior Court must vacate an arbitrator's award:

"(1) When the award was procured by fraud.

"(2) Where the arbitrator * * * exceeded [his or her] powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.

"(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13."

In interpreting this statute, this court has held that the courts have limited power to disturb an arbitrator's award. "Absent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld. Moreover, as long as an arbitrator's award ' "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority and our review must end.' " *Town of Coventry v. Turco*, 574 A.2d 143, 146 (R.I.1990) (quoting *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)). "Nevertheless, because arbitration is a creature of the agreement, the preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376, 378 (R.I.1991) (citing *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 570–71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403, 1433 (1960) (Brennan, J., concurring)).

The state argues that the Superior Court properly vacated the arbitrator's award because the award did not draw its essence from the CBA. Essentially the state argues that because the CBA does not contain provisions regarding the application of personnel rules to the employees subject to the CBA, the arbitrator was without authority to review any decision made under the personnel rules. Moreover, citing *Vose v. Rhode Island Brotherhood of Correctional Officers*, 587 A.2d 913 (R.I.1991), the state contends that the director of the department has certain "non-delegable" powers—including the power to find that an employee has violated Personnel Rule 6.04 and been deemed to have resigned—and that this power cannot be "bargained away" in the CBA or by means of an arbitrator's decision thereunder.

The union argues that the Superior Court erred in vacating the award because the question of whether DiDonato's termination was without just cause was clearly an arbitrable grievance under the CBA. The union further contends that *Vose* is inapplicable in the current action because there is no conflict between the CBA and the merit-system laws. The union concludes that under the deferential standard of review that the courts should apply in reviewing arbitrators' awards, the award to reinstate DiDonato with back pay did not manifestly disregard any contractual provision, nor was it a completely irrational result.

## III

■ The relationship between collective bargaining of public employees and existing civil-service or merit-system laws often can be complex. As one commentator has noted:

"Commentators and practitioners vary in their views about the implications of collective bargaining for civil service and the merit principle. Some commentators have stressed the incompatibility of collective bargaining and civil service, suggesting either a never-ending conflict or the doom of one of the two systems. Most commentators and practitioners, however, believe that the two systems can be accommodated." Ann C. Hodges, *The Interplay of Civil Service Law and Collective Bargaining Law in Public Sector Employee Discipline Cases,* 32 B.C. L.Rev. 95, 98 (1990). Likewise, we believe that the wise and proper course is to accommodate the two systems where possible in order to give full effect to the intent of the Legislature in providing for these two systems of public-employee relations and discipline.

■ It is obvious that the merit-system and review-board rules overlap with the CBAs and grievance procedures negotiated by the representatives of organized state employees. The legislative scheme would seem to indicate that grievance procedures should be made available to organized state employees even though another remedy might have been available through merit-system appellate procedures. The merit-system structure and the collective-bargaining structure should be so interpreted that both may coexist in harmony. Although there may be some limitations on a CBA to supersede state statutes in certain critical areas such as the obligation of the director of corrections to require overtime services under emergent conditions, *Vose, supra,* or a chief judge to exercise control over a disobedient subordinate, *Rhode Island Laborers' District Council v. State,* 592 A.2d 144 (R.I.1991), generally there is no statutory inhibition against a state employee's utilizing the collectively bargained-for grievance procedure in respect to conditions of employment, including dismissal.

■ Furthermore, the Legislature specifically rejected the notion that the application of the merit system should preclude issues from falling within the purview of collective bargaining. In repealing G.L.1956 (1969 Reenactment) § 36–11–5, which exempted from collective bargaining matters exclusively covered under the merit system, the Legislature clearly demonstrated its intention that the two systems coexist and that the merit system not supersede valid collective bargaining. P.L.1972, ch. 277, § 2; *see also Rhode Island Council 94 v. State,* 456 A.2d 771, 774 (R.I. 1983) (noting that by repealing § 36–11–5, "the Legislature did not intend to impose the merit system upon parties submitting to binding arbitration").

Moreover, the merit-system statute itself mandates that any personnel rules promulgated thereunder should not alter the conditions of employment of collectively organized state employees. The statute states that "[r]ules promulgated pursuant to this section shall not change conditions of employment in a unit covered by a collective bargaining agreement." Section 36–4–8(b). On its face this subsection prohibits the rules from altering the union's and the state's collectively bargained agreement, which relates to the unionized employees' conditions of employment. However, it does not prohibit the application of personnel rules to collectively organized employees. Rather, it mandates that the rules not alter the conditions of employment for which the parties to a CBA have properly bargained.In any event this subsection makes clear that the Legislature contemplated that the two systems should interact and coexist.

■ None of the foregoing should be deemed to suggest that the rules of the merit system should not be interpreted and applied by an arbitrator in making a determination of a dismissal for just cause under the CBA. As we stated in *Vose,* arbitrators may and should decide questions of relevant state law and the interpretation thereof in resolving a grievance brought pursuant a CBA. In this case the arbitrator correctly looked to Personnel Rule 6.04 and its proper application in deciding upon DiDonato's grievance. He merely determined that because of Levin's assurances to DiDonato and because the state had not brought forward sufficient evidence to show that the requested materials had not been received by the department within the required timeframe, Personnel Rule 6.04 was not properly invoked and Di-

Donato's termination was therefore without just cause.

## IV

From the foregoing, it is clear that the grievance before the arbitrator was arbitrable—it drew its essence from the CBA that prohibits the dismissal, demotion, or suspension of a bargaining-unit employee without just cause. Certainly, when an employee is discharged, whether the discharge is styled a "resignation without notice" or a termination or dismissal, the net effect is that the employee loses his or her job. It must be determined, therefore, whether under the applicable CBA, this employee lost his position without just cause.

Although it is true that there are certain narrow circumstances in which a supervisor, empowered by clearly delineated state law, must be allowed to act in a manner free of the constraints of the CBA, *see, e.g., Vose*, and *Rhode Island Laborers' District Council*, both *supra*, the situation in the case at bar does not involve such a critical area of state power. The only question before the arbitrator was whether DiDonato's absence from his position without proper notice or medical documentation justified his dismissal. The resolution of this question does not interfere with the power of the director of the department to perform any essential aspect of his position. The issue at hand is clearly arbitrable.

It is equally clear to us that the arbitrator's award is not in manifest disregard of any CBA provision and the result is in no way irrational. As we noted above, the arbitrator gave due and proper consideration to the personnel rules in determining whether the director had just cause under the CBA to dismiss DiDonato. The arbitrator could easily have found that Levin made the representation to DiDonato that he only needed to provide medical documentation by the end of the work week and that DiDonato acted pursuant to Levin's request. It is also rational for the arbitrator to have concluded that because no documentary evidence was put forward by the department to show that the documents were not received by the state by the required date, DiDonato did provide the documents within the required time period and should not have been dismissed.

For the foregoing reasons we hold that the Superior Court improperly vacated the arbitrator's award. The award of the arbitrator should have been confirmed. The appeal of the union is sustained. The order of the Superior Court is vacated. The papers in the case may be remanded to the Superior Court with direction to confirm the arbitrator's award.