DECISION
This matter is before the Court on the respective motions of the parties to vacate or confirm an arbitration award.
The following issue was submitted to an arbitrator pursuant to a collective bargaining agreement between the parties:
 "Did the State violate the article 20 (sic) of the collective bargaining agreement when it denied unbidded officers the right to select their post assignments for any given shift, based upon their seniority? If so, what shall be the remedy?
The arbitrator found that the State did violate the collective bargaining agreement and ordered that shift commanders at roll call permit "unbidded officers" working that shift to select, in order of their seniority, their post assignments from among the posts the shift commander is filling for that shift.
The pertinent provisions of the agreement referred to in the issue submitted and the award read as follows:
 "10.1 It is hereby agreed that subject to the provisions of subsection 2 (10.2) of this article the parties have to recognize and accept the principle of seniority within a class of position in all cases of *** job and location assignment ***.
 "10.2 Vacancies or new positions shall be posted and bidded according to seniority within seven days of the date on which the vacancies or new positions occur ***."
An "unbidded officer" is one who does not have a bidded assignment on the particular work shift. The other officers on the shift report to their bidded posts which they have selected by bid. The unbidded officers are assigned by the shift commander to unfilled posts on the shift. The issue arises when more than one unbidded officer reports to work on a given shift. The question then is: Who decides what posts each such unbidded officer will fill? The shift commander, or the officers, themselves, in accordance with their seniority?
The Brotherhood argues that the arbitrator's award is a clear and classic resolution of a conflict as to the meaning of the terms of the agreement as applied to a dispute arising in the course of the employment relation between the parties to the agreement. Since the award is clearly derived from the agreement and is part of the collective bargaining procedure, it is well established that the Courts do not substitute their judgment on the facts for that of the arbitrator nor do they attempt to correct the arbitrator's errors of law, if any. Rhode IslandBrotherhood of Correctional Officers v. State, 643 A.2d 817, 820 (R.I. 1994).
The State argues that the arbitrator failed to apply an undisputed past practise in the construction of the contract provisions regarding seniority in job and location assignment on a shift-by-shift basis for so-called unbidded officers. RhodeIsland Court Reporters Alliance v. State, 591 A.2d 376 (R.I. 1991).
There was evidence that for years unbidded officers were assigned to posts by shift commanders without meticulous regard to seniority. The arbitrator found, nonetheless, that such a practise did not trump what he found to be the clear and unambiguous language of paragraph 10.1, which did not distinguish between bidded posts and temporarily unbidded posts, to all of which seniority was to apply. That analysis is peculiarly within the competence of the arbitrator. His decision on the "common law of the shop" must not be reviewed for error, unless it leads to an irrational result.
The State also argues that the arbitrator's award is irrational because he failed to consider and correctly apply a "past practices" provision of the agreement. It argues that by virtue of paragraph 35.5 past practises are made a contractual provision, even if they are not expressly included as a term of the agreement. Even if the resolution of this contention is within the exclusive domain of the arbitrator, the clause itself maintains only those privileges and benefits enjoyed by the employees, not by the State.
If that were all there is to this case, decision would be easy. The holdings in Belanger v. Matteson, 115 R.I. 332, 345 A.2d 124, stay den. 354 A.2d 419, cert. den. 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1975) and its progeny would require that this award be confirmed and not vacated.
The State asserts that, notwithstanding its submission to arbitration, the dispute was not substantively arbitrable. The State asserts that Vose v. Rhode Island Brotherhood ofCorrectional Officers, supra. (hereinafter, simply "Vose"), and State v. Rhode Island, Department of Mental Health,Retardation and Hospitals v. Rhode Island Council 94, AFSCME,AFL-CIO, 692 A.2d 318 (R.I. 1997) (hereinafter, simply"MHRH"), mandate that the issue of assignment of "unbidded officers" to posts on each shift is not subject to collective bargaining and concomitant arbitration, because it is a matter entrusted by statute to the director, and not delegable by him to the Brotherhood. The State also argues that, even if the application of seniority to the assignment of unbidded officers to posts each shift, the remedy awarded impinges directly on the director's nondelegable duty to provide for the security of the correctional facility, and, accordingly, violates public policy.
Both Vose and MHRH are carefully crafted opinions. They are obviously not intended to be ad hoc resolutions of singular factual problems. The general question of when collective bargaining between the State government and its employees so impinges on the ability of the State to govern that governmental powers and duties are invaded will continue to be raised and must be addressed on a regular basis. The State is one of the largest, if not the largest, employer in the state. Collective bargaining agreements affect virtually every department and agency of State government and the vast majority of State employees are represented by a collective bargaining representative. Every director and head of every state agency has some form of statutory charge which may not be delegated away by collective bargaining.
In Vose the Director of Corrections attempted to deal with an increased correctional population by adopting a mandatory involuntary overtime policy under his statutory power to provide for the safety, discipline, care and custody for all persons committed to correctional facilities under G.L. § 42-56-10(v). Although there was nothing in the record showing that the director would be unable to carry out his statutory duties unless he had the power to mandate involuntary overtime, it is apparent that the Court reasoned that the director could best assess the risk of an emergency from his failure to post all the correctional personnel he felt was necessary for security, and that he should not be constrained in that decision by a collective bargaining agreement. What is implicit in the opinion is that, if the director did not have the power to mandate overtime, irrespective of the terms of the agreement, he would not be able to carry out his governmental duties and powers. The threat of emergency is what impels the Vose decision, as was pointed out in a comment in Rhode Island Brotherhood ofCorrectional Officers v. State, supra, 643 A.2d, at 821, 822 (hereinafter "R.I. Brotherhood"). There are "critical areas" of state power, which may not be impinged by collective bargaining. Security of correctional facilities is one. Consequently, if a provision of a collective bargaining agreement threatens the security of a correctional facility, that provision is not bargainable and a grievance arising from an alleged violation of such a provision is not arbitrable.
MHRH enlarges the scope of the "critical areas" of State government upon which collective bargaining may not encroach. Having determined in that case that the Director of MHRH had a statutory duty, like the Director of Corrections in Vose, to carry out a governmental function with regard to the patients in the department's care, the Court then pointed out: "Nor should the department have to put patients at risk by being forced to allow its disabled patients to be cared for by employees who insist on voluntarily working three consecutive shifts in nonemergency situations." MHRH, supra, 692 A.2d, at 325. Obviously, the care of "disabled patients" exposes the State government to the risk of being unable to function in a "critical area" of its statutory powers and duties.
The question then becomes whether assignment of posts to unbidded officers is more like Vose and MHRH or R.I.Brotherhood. There is nothing in the record which shows how many unbidded officers can be expected to report for work on any given shift. The so-called "permanent" or "bid" posts on any shift will always have already been assigned by seniority. So, the State implicitly agrees that the principle of assignment of posts by seniority, in and of itself itself, does not encroach on the director's ability to carry out his responsibility to secure the institution and avoid emergencies therein.
Recognizing that it implicitly accepts the principle of seniority generally for "permanent" post assignments, rather than any other standard of particular qualification, the State nonetheless argues that assignment of "unbid" posts at the shift roll call will interfer with the important briefing time at each roll call, which is a part of the work day of that shift. Allowing the unbidded officers to bid the unbid posts at the beginning of each shift, according to the State, "creates the specter of the same officers deliberating over which assignments are acceptable to them, while simultaneously obstructing the penological operation of pre-shift briefings."
Brief of State of Rhode Island, May 2, 1997, p. 8. It is not clear from the record why it is any faster for the shift commander to assign unbid posts to the unbidded officers than for the unbidded officers to select those posts in order of their seniority. Surely the shift commanders must take some time to decide which officer should be assigned to which post. Nothing in the award allows the unbidded officers to take more than an equally very brief period to assess their relative seniority and select their respective posts.
This case is different from Vose, because in Vose, unless the director had unfettered discretion to order mandatory involuntary overtime, there was a real risk that posts essential to the security of the prison might be totally uncovered because of a personnel shortage. In this case the issue is not whether an essential post can be covered at all, but who among equally competent employees will fully cover the post. The encroachment, to the extent there is any at all, on the director's statutory charge on this record cannot be more than minimal. Since the security of the prisoners is not shown to be compromised by a slight change in the procedure for assignment of posts, no critical area of State government is impacted by the arbitrator's construction of this provision of the collective bargaining agreement. The issue is simply one of routine personnel management, the subject of everyday collective bargaining.
For all the foregoing reasons, the State's motion to vacate the award will be denied, and the Brotherhood's motion to confirm it will be granted.
The Brotherhood will present an Order for entry on reasonable notice to the State.