DECISION
Before the Court are the plaintiff's Motion to Stay Implementation of an Arbitration Award, the plaintiff's Motion to Vacate an Arbitration Award, and the defendant's Motion to Confirm an Arbitration Award. Jurisdiction is pursuant to G.L. 1956 § 28-9-14.
 Facts/Travel
In December of 1996, a collective bargaining grievance arose between the plaintiff employer, the State of Rhode Island Department of Corrections (Department), and the defendant union, the Rhode Island Brotherhood of Correctional Officers (union), representing employee Thomas Ryan (Ryan or Grievant), a correctional officer assigned to the medium security facility of the Adult Corrections Institution (ACI). Pursuant to a collective bargaining agreement (CBA) between the parties, they proceeded to arbitration.[1] The parties stipulated two issues: (1) "Was the termination of the grievant, Thomas Ryan, for just cause?" and (2) "If not, what shall be the remedy?" Additionally, the Department questioned whether the grievance was substantively arbitrable. (Arbitration Decision dated March 20, 2000 (hereinafter Dec.) at 1)
The arbitrator found:
 "The grievance is substantively arbitrable.
The grievance is upheld in part and denied in part. There is no just cause for termination of the Grievant, Thomas Ryan. There is just cause for a suspension for his interpersonal relationship with the inmate under his custody and care. The Grievant is to be suspended for a period of sixty (60) days. Following his suspension, he shall be reinstated to his former or substantially equivalent position as Security Guard. The Grievant shall be made whole for any loss of earnings, including benefits and other terms and conditions of employment, with interest, but less any interim earnings including unemployment benefits. Since some three plus years have elapsed since the incident giving rise to the grievance, the time of the suspension will be considered served. However, it shall be referenced in his personnel file, and reference to his termination shall be expunged."
(Arbitrator's Award dated March 20, 2000 (hereinafter Award)) Ryan, a 10-year employee, had worked primarily as a correctional officer in the ACI. In December, 1996, he was assigned to the 3 p.m. to 11 p.m. shift at the Eleanor Slater Hospital (Slater), an ACI facility housing inmates who temporarily require a medical stay. At that time, inmate Jerry Steele (Steele), an established informant, was hospitalized at Slater. While there, he was guarded around-the-clock by Ryan and other correctional officers on rotating shifts. Steele remained shackled to his bed unless he was using the toilet facilities or undergoing exercise or medical treatment, during which time he wore shackles on his feet, as well as handcuffs.
The incident from which the grievance and Ryan's discharge arose occurred on the evening of December 6, 1996. After Ryan's shift, the subsequent guard noticed that the key for Steele's handcuffs (key) was missing. On December 9, a report of the missing key was filed, and an extensive search and investigation ensued. Steele reported that the key was in his possession and that Ryan had sold him the key for $160.00. The key and a "flex cuff" were confiscated from Steele's room. After the investigation, Ryan was dismissed for conduct unbecoming a correctional officer on March 29, 1997.
According to the investigation, Steele contended that Ryan was "weak" and that Steele had been "working on him" for three weeks prior to the key incident. (Dec. at 3-4) Upon learning of Ryan's financial obligations, Steele purportedly offered money for the key. Besides the incident on December 6, Steele testified that the grievant had shared information about his financial and domestic difficulties, and that Ryan shared food and personal information, including his home address, with him and other forbidden amenities, such as walking unshackled and using a telephone. Steele also testified that Ryan knew of his escape plan. Ryan admitted to sharing food and some personal information with Steele and conceded having been manipulated, but denied any participation in a conspiracy to allow Steele to escape for financial gain. He contended that Steele could have obtained his home address from a magazine label. Ryan insisted that Steele was not improperly uncuffed or unshackled while under his guard. He also stated that he did not know how the key became separated from the key ring or how Steele obtained the "flex cuff." The inspectors' report included a review of Ryan's personnel file.
It concluded that Ryan "was responsible for misplacing the handcuff key during his shift and should be disciplined for dereliction of duty and a Disciplinary Hearing scheduled." (Dec. at 10).
During the arbitration hearing, George A. Vose, Director of Corrections (Director), testified for the State. He stated that although he did not like to "take an inmate's word," there was no other plausible explanation for the disappearance of the cuff key. (Dec. at 10) He raised the consequences of "downing the duck," a situation wherein a guard allows himself to be compromised by an inmate. (Dec. at 10) Additionally, he referenced the Code of Ethics regarding the issue of employees' personal relationships with an inmate and the training provided to Ryan to prevent such a compromise. The Director stated that "the discharge in the present situation was warranted in view of the risk of escape and the possibility of injury to others." (Dec. at 10).
Following hearings on June 10, July 1, and August 5, 1999, the arbitrator's decision and award were issued on March 20, 2000. Thereafter on May 22, 2000, the Department filed in this Court, pursuant to G.L. 1956 §§ 28-9-18(b) and (14) respectively, a Motion to Stay Implementation of Arbitration Award and a Motion to Vacate Arbitration Award. On June 28, 2000, the union filed its Petition for Confirmation of Arbitrator's Award and an objection to the Motion to Stay. In its Petition, the union requested, pursuant to G.L. 1956 § 28-9-18(c), costs and reasonable attorney's fees should the Department's motion to vacate be denied. This Court finds no reason for delay, nor has it discovered, in its review of the arbitrator's decision, any disputed facts precluding this court from making a final decision on the merits.
 Standard of Review
Pursuant to G.L. 1956 § 28-9-18(a), upon application of an interested party, the Superior Court must vacate an arbitrator's award:
 "(1) When the award was procured by fraud.
 (2) Where the arbitrator . . . exceeded [his or her] powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13."
In interpreting this statute, this court has limited power to disturb an arbitrator's award. The Rhode Island Supreme Court has "long recognized that the authority of the judiciary to `review . . . the merits of an arbitration award is extremely limited.'" Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL-CIO,763 A.2d 604, 605 (R.I. 2000) (quoting State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94, 692 A.2d 318, 322 (R.I. 1997)). It is well-settled that "[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the [arbitration] award will be upheld." Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998). Thus, it is only when an arbitration award fails to embody even a "passably plausible" interpretation of the contract that it must be struck down by the [c]ourt upon review. Town of North Providence, 763 A.2d at 606 (citing Town of Smithfield v. Local 2050,707 A.2d 260, 264 (R.I. 1998) (quoting Westcott Construction Corp. v. City of Cranston, 586 A.2d 542, 543 (R.I. 1991) ("`[A]s long as the award draws its essence from the contract and is based upon a `passably plausible' interpretation of the contract,' we shall uphold it.'")). The burden of proving that an arbitrator's decision and award represents a manifest disregard of the provisions of the collective bargaining agreement or concludes therefrom an irrational result, is upon the party objecting to the judicial confirmation of the arbitrator's decision and award.
Town of Coventry v. Turco, 574 A.2d 143 (R.I. 1990); Coventry Teachers' Alliance v. Coventry School Committee, 417 A.2d 886, 888 (R.I. 1980).
"Nevertheless, because arbitration is a creature of the agreement, the preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." Rhode Island Brotherhood of Correctional Officers v. State of Rhode Island, 643 A.2d 817, 820 (R.I. 1994) (quoting Rhode Island Court Reporters Alliance v. State of Rhode Island, 591 A.2d 376, 378 (R.I 1991) (citation omitted)). As our Supreme court has previously stated:
 "the issue of whether a dispute is arbitrable concerns a question of law and is subject to a broader standard of review than is the arbitrator's decision on the merits. . . .Courts should not equate the issue of arbitrability with the deference due the arbitrator's interpretation of the contract. . . .Rather, a reviewing court must decide the question of arbitrability de novo."
Providence Teachers Union v. Providence School Board, 725 A.2d 282, 283 (R.I. 1999) (per curiam) (citations omitted). Moreover, "`the right to have the grievance heard in arbitration at all, [is] the equivalent of subject matter jurisdiction in the courts.'" Id. (quoting Rhode Island Brotherhood of Correctional Officers, 707 A.2d at 1235). Therefore, a court is "not barred from raising the arbitrability issue sua sponte, nor would any party have been precluded from raising it at any time." Id.
 Arbitrability
A close reading of the arbitrator's decision reveals that he analyzed the arbitrability issue and the two issues that the parties had submitted. Regarding the arbitrability issue, the arbitrator considered the parties' respective contentions and caselaw in support thereof. The State, relying on the Director's nondelegable authority pursuant to G.L. 1956 § 42-56-10 to maintain security, safety and order at all state correctional facilities, contended that the Director's decision to terminate Ryan was exclusive and therefore not substantively arbitrable. The union countered that the matter was arbitrable under the just cause provision of the CBA and within the arbitrator's statutory authority to modify a penalty imposed by an employer. See G.L. 1956 § 28-9-1
("Unless the parties agree otherwise in writing that the arbitrator has no authority to modify the penalty imposed by the employer in the arbitration of matters relating to the disciplining of employees, including, but not limited to, termination . . . , the arbitrator has the authority to modify the penalty imposed by the employer and/or otherwise fashion an appropriate remedy.") The arbitrator found that the grievance "complies with the definition as set forth in the agreement in that it relates to a dispute between the employee and the State and concerns the application of the just cause language of Article XVI inasmuch as it contends that the termination of the Grievant was not for just cause." (Dec. at 15)
It is well-settled that the Director has nondelegable authority to maintain security, safety, and order at all state correctional facilities. G.L. 1956 § 42-56-10(2); see also State of Rhode Island Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 725 A.2d 296 (R.I. 1999) (an arbitrator determined that there was just cause for disciplinary measures, but improperly substituted his judgment for that of the director regarding what the proper disciplinary action should be).
Regarding corrections employees, he is empowered to "suspend, demote, discharge, or take other necessary disciplinary action." G.L. 1956 § 42-56-10(7). However, the CBA expressly requires that discharge be imposed only for just cause. CBA at § 16.1 ("It is agreed that an Appointing authority may dismiss, demote or suspend an employee for just cause.") In the CBA, the parties have defined a grievance to mean "any difference or dispute between the State and the Brotherhood or between the State and any employee with respect to the interpretation, application or violation of the terms of this Agreement." Id. at § 17.7(a). Further, "grievances arising out of the provisions of [the CBA] relating to the application or interpretation thereof may be submitted to the arbitration board." Id. at § 18.3.
Accordingly, because the grievance invokes the just cause standard under § 16.1, the issue of whether the grievant was terminated for just cause is substantively arbitrable.
 Arbitrator's Determination of Just Cause
In determining whether or not just cause existed for Ryan's termination, the arbitrator found that there was no just cause for Ryan's discharge; however, he then concluded that Ryan's interpersonal relationship with Steele constituted just cause for suspension. Regarding the termination, the arbitrator stated:
 "The story related by Steele does not stand up to scrutiny and falls short of its mark in terms of being logical or persuasive. It is probable that the key came into Steele's hands through carelessness and not through some devious plot.
While the incident happened on the Grievant's `watch' it is not absolute that he was responsible. To sustain a discharge for such an alleged undertaking the burden is on the State to establish that there was reasonable cause to believe that the Grievant engaged in illegal activity. The facts do not support the State's allegation. It did not have just cause to terminate the Grievant for that activity."
 . at 22-23)
However, in his analysis regarding Ryan's interpersonal relationship with the inmate, the arbitrator conceded that "getting to close to an inmate or allowing an inmate to gain a relationship with a security officer may rise to a level of a breach of the Code of Ethics. Efforts by an inmate to gain familiarity with an officer could lead to problems [sic] are referred to as `downing the duck.'" (Dec. at 21) In arriving at his conclusion that just cause for suspension existed, the arbitrator reasoned:
 "With respect to the aspect of fraternization and exchange of food (contraband) there is evidence and admission by the Grievant that he did go too far in his relationship with Steele. However, while that is deserving of some discipline, his prior record and his actions in relation with Steele do not, in this Arbitrator's judgment, rise to the level of warranting termination. As stated, the situation in the hospital can promote conversation and interpersonal relationships that would not occur in a secure environment, where an inmate is housed in a cell. That, however, does not totally excuse the Grievant. . . .[T]here is just cause for his suspension for his getting too close in his relationship with the inmate."
(Dec. at 23) The arbitrator then stated that a sixty (60) day suspension was the appropriate disciplinary sanction.
 Arbitrator's Authority to Modify Employee Penalty
After finding just cause to discipline the grievant, the arbitrator, relying on his authority to modify employee penalties pursuant to §28-9-1, substituted a sixty (60) day suspension for discharge. The Department argues that the arbitrator exceeded his authority under the CBA and that the arbitration award yielded a completely irrational result. Conversely, the union argues that the subject award to reinstate Ryan with back pay was consistent with § 28-9-1, did not manifestly disregard any contractual provision, and was not an irrational result.
In the managements-rights section of the subject CBA, the union "recognizes that except as limited, abridged, or relinquished by the terms and provisions of this Agreement, the right to manage, direct or supervise the operations of the State and the employees is vested solely in the State." (CBA, Article IV) This section further provides in relevant part:
 "For example, the employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:
 . . .
 B. To hire, promote, transfer, assign, and retain employees in positions within the bargaining unit, and to suspend, demote, discharge or take other disciplinary action against such employees; . . .
 E. To relieve employees from duties because of lack of work or for other legitimate reasons; . . . "
Id. Although the CBA requires that disciplinary sanction be imposed against an employee only for just cause, the management-rights provision expressly gives the Department the right to suspend, demote, discharge or take other disciplinary action against employees. See, e.g., Rhode Island Laborers' District Council v. State of Rhode Island, 592 A.2d 144, 145-46 (R.I. 1991) (arbitrator's modification of termination imposed by chief judge was in disregard of the collective bargaining agreement); see also G.L. 1956 § 42-56-10(7) (the Director shall "[h]ire, promote, transfer, assign, and retain employees and suspend, demote, discharge, or take other necessary disciplinary action"). Recently, in State of Rhode Island Department of Corrections, the Supreme Court addressed whether an arbitrator, believing there to be just cause for disciplinary action to be imposed, may properly substitute his or her judgment for that of the director regarding what the proper disciplinary action should be. 725 A.2d at 298. The Court harmonized the statutory language of § 28-29-1, which empowers an arbitrator to modify a penalty of an employer unless the parties agree in writing that the arbitrator shall have no such authority, with § 42-56-10, which "outlines the powers of the director of the Department of Corrections, in light of the director's nondelegable authority to maintain security, safety, and order at all state correctional facilities." Id. (citing § 42-56-10(2)). Therein, the Court stated its belief "that the legislature did not intend the director under a collective bargaining agreement to abdicate the disciplinary function to an arbitrator in light of the awesome responsibility imposed upon the director." Id.
In the matter before this Court, as in State of Rhode Island Department of Corrections, albeit for a different reason, the arbitrator found no just cause for the employee's termination but concluded that the employee should be disciplined as a result of his conduct. Specifically, he found just cause for suspension based on Ryan's "getting too close in his relationship with the inmate." (Dec. at 23) At the same time, like the arbitrator in Rhode Island Laborers' District Council who did not find three charges of insubordination credible, the arbitrator here did not find the alleged violation involving the key supportable. See Rhode Island Laborers' District Council, 592 A.2d at 146. As did the arbitrators in State of Rhode Island Department of Corrections and Rhode Island Laborers' District Council, the arbitrator herein determined there to be just cause for disciplinary measures to be imposed. It appears, as in State of Rhode Island Department of Corrections, here the arbitrator impermissibly "substituted his judgment of what the proper disciplinary action should be" for that of the Director. 725 A.2d at 298; see also Rhode Island Laborers' District Council, 592 A.2d at 145-46. The union's contention that State of Rhode Island Department of Corrections is distinguishable and therefore inapplicable to the current action essentially because it involved criminal conduct on the part of the employee is not persuasive. Accordingly, the arbitrator herein may not substitute his judgment for the Director regarding the appropriate disciplinary measure. Under the circumstances, it would seem irrational to conclude that the Director, pursuant to §§ 42-56-10(2) and42-56-10(7), is powerless to terminate a security guard who allows himself or herself to be compromised by an inmate, thereby creating a potential security risk.
For the foregoing reasons, the Motion to Vacate is granted; the Motion to Stay is moot; and the Motion to Confirm is denied. The finding of just cause is affirmed; the modification of the disciplinary penalty is vacated and set aside.
Counsel shall present the appropriate judgment for entry in accordance herewith.
[1] The subject arbitration award is denominated as American Arbitration Association Award ("AAA") Case No. 11 E 390 01932 97.