**RHODE ISLAND COURT REPORTERS ALLIANCE**

v.

**STATE of Rhode Island.**

**No. 90–211–Appeal.**

Supreme Court of Rhode Island.

May 14, 1991.

Richard Skolnik, Lipsey & Skolnik, Providence, for plaintiff.

Lauren E. Jones, Jones Associates, Providence, for defendant.

OPINION

MURRAY, Justice.

This case comes before us on appeal by the plaintiff, Rhode Island Court Reporters Alliance (the alliance), from an order of the Superior Court denying the alliance's motion to confirm a December 5, 1989 arbitration award and granting the state's motion to vacate the award. The trial justice vacated the award on the ground that the

matter was not substantively arbitrable under the terms of the collective-bargaining agreement (the agreement) between the parties. For the reasons that follow, we affirm.

The dispute arose out of the following situation. For several years and over the course of several contract negotiations, the state had provided free parking to those members of the alliance who worked in the Family Court at the Garrahy Judicial Complex in downtown Providence. They were permitted to park in a lot on Dyer Street that was leased to and controlled by the Department of Transportation (DOT). The collective-bargaining agreement, however, was silent on the issue of free parking.

In April of 1989 DOT notified the judicial department that construction work on a section of Route 195 passing over the Dyer Street lot would begin on May 8, 1989, and would continue until November 15, 1989, thereby reducing the number of available parking spaces to seventy-two. The judicial department arranged to allocate the remaining parking spaces by lottery. The department divided the twenty-eight weeks during which the construction would take place into four seven-week periods. Each member of the alliance who had previously enjoyed free parking would be permitted to park in the lot only during his or her assigned period. Contending that this action violated the collective bargaining agreement, the alliance filed a grievance against the state, requesting as settlement that the state provide alternative parking spaces to the employees. The alliance argued that even though the agreement did not specify that the state had to provide free parking, an enforceable past practice had been established that the state could not unilaterally alter. A hearing officer denied the grievance on the ground that the past-practice article had been negotiated out of the agreement in 1983 and that, therefore, there was no violation of the agreement. Thereafter the alliance made a demand for arbitration, and the dispute was heard by a member of the American Arbitration Association (AAA).

In the award dated December 5, 1989, the arbitrator addressed the threshold question of whether the grievance was substantively arbitrable. Reasoning that the relevant case law of Rhode Island and other jurisdictions had established a liberal set of guidelines by which to interpret collective-bargaining agreements, the arbitrator concluded that the grievance was arbitrable. The arbitrator then ruled that "the loss of parking spaces * * * was, under the circumstances, a violation of the collective bargaining agreement in that it constituted an unwarranted, unilateral cessation of an established past practice." He ordered the state to reimburse the grievants $5 per day for each day they were at work and deprived of free parking. The state filed a request to clarify the award, but unfortunately the arbitrator died before he could act on the request, and the AAA declared the proceedings closed.

The alliance then moved to confirm the award in Superior Court. The state filed a motion to vacate or modify the award and moved for a stay of the award under G.L. 1956 (1986 Reenactment) § 28–9–18(b). The trial justice heard arguments by the parties but did not allow the state to present witnesses. On February 6, 1990, the trial justice rendered a bench decision granting the state's motion to stay and/or vacate the award and denying the alliance's motion to confirm. The trial justice stated that he had found it unnecessary to look beyond the four corners of the collective-bargaining agreement to determine whether there was a grievance that was substantively arbitrable; because there was not, the arbitrator had exceeded his jurisdiction. An order vacating the award was entered on February 21, 1990, from which the alliance now appeals.

■ The United States Supreme Court has held that a court shall rule in favor of submitting a dispute to arbitration unless the arbitration clause of the collective-bargaining agreement cannot be interpreted to include the asserted dispute, and that all doubts should be resolved in favor of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363

U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417–18 (1960). "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403, 1407 (1960). "The courts, therefore, have no business weighing the merits of the grievance." *Id.* at 568, 80 S.Ct. at 1346, 4 L.Ed.2d at 1407. The reason for this hands-off approach, with which we agree wholeheartedly, derives from the unique nature of arbitration. Arbitrators bring to the process their special knowledge and experience and the flexibility to meet a variety of unanticipated situations. "As long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978) (quoting language from *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960)). Nevertheless, because arbitration is a creature of the agreement, the preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance. *American Manufacturing*, 363 U.S. at 570–71, 80 S.Ct. at 1364, 4 L.Ed.2d at 1433 (Brennan, J., concurring).

Section 16.1 of the collective-bargaining agreement at issue in this case states that "[i]f a grievance is not settled as set forth" in the grievance-procedure section, "it shall * * * be referred to" arbitration. Section 15.1 defines "grievance" as "any difference or dispute between the State and the Alliance with respect to the interpretation, application or violation of any of the provisions of this Agreement." As the trial justice noted, this is a narrow definition that limits arbitrable grievances to those claims that derive from the agreement. In *contrast*, the arbitration clause in *Warrior & Gulf* was far broader, extending to "any local trouble of any kind." 363 U.S. at 576, 80 S.Ct. at 1349, 4 L.Ed.2d at 1414. Although there is a presumption favoring arbitration, some provision within the agreement—either a specific provision detailing the matter or a past-practices provision incorporating implied conduct into the contract—should exist to permit submission of the matter to arbitration. Clearly there was no specific provision detailing the privilege of free parking. Therefore, only the presence of a past-practices provision would allow us to look beyond the agreement in these circumstances.

A past practice is a consistent prior course of conduct between the parties to a collective-bargaining agreement that may assist the arbitrator in determining the parties' intent. The alliance argues that past practices become an implied part of the collective-bargaining agreement, and therefore subject to arbitration, unless expressly excluded. We are of the opinion, however, that the contract must contain a past-practice provision or a savings clause that evidences the mutual intent of the parties to establish these benefits as enforceable past practices. Otherwise these past practices cannot serve as the basis for arbitration. Not only is a past-practice provision absent from this agreement, but if it ever existed, we note that it was *negotiated out* in 1983. This, therefore, is the clearest indication we have that the parties intended to arbitrate only express provisions of the contract. It would be inappropriate for this court to order the parties to accede to those provisions that they previously agreed to omit. Accordingly we must limit our analysis to the four corners of the instrument, as the trial justice did. Because the privilege of free parking was not an express provision, we hold that this grievance was not arbitrable and the privilege of free parking was a mere gratuity.

Even if we were to include past practices as grounds for arbitration under this agreement, we would not include this particular past practice. Evidence of mutual intent to adopt the course of conduct must be shown in order to sustain the

practice. Five indices that assist in determining this mutual acceptance are (1) clarity and consistency throughout the course of conduct, (2) longevity and repetition creating a consistent pattern of behavior, (3) acceptance of the practice by both parties, (4) mutuality in the inception or application of the practice, and (5) consideration of the underlying circumstances giving rise to the practice. *National Broadcasting Co.*, 67 Lab.Arb. (BNA) 989, 991–92 (1976) (Blouch, Arb.). In *National Broadcasting* the union alleged that a past practice of providing free parking had arisen such that the employer was obligated to reimburse union members for parking when the company relocated to a building without available parking. After citing the five considerations, the arbitrator determined that the practice satisfied none of them:

> "One might, of course, contend that there was a certain consistency and longevity insofar as [the] employees could park free while stationed at the Nebraska Avenue Facility, which had been their location for the past fifteen years. Yet, while free parking was available at the Company-owned premises on Nebraska Avenue, this benefit existed not because the parties agreed upon the concept (mutuality) nor even because they ever discussed it (acceptability) but simply because the parking facilities were there." *Id.* at 992.

In our present case free parking was fortuitously available to a select group of alliance members stationed at one particular courthouse simply because the parking lot was there. This did not create a binding past practice. Even if it had, "[w]hen the underlying circumstances supporting a binding practice change, there is good reason to conclude that the practice itself, being 'no broader than the circumstances from which it arises', may also change." *Id.*

As we know from our own experiences, parking is a problem for those who work in downtown Providence. In a collective-bargaining agreement as explicit as the agreement in this case, delineating matters of tuition reimbursement, mileage allowance, storage for stenographic notes, and equipment and supplies, it is only reasonable to expect that a matter as integral as parking would be provided for specifically if at all. We believe that those members of the alliance who were privileged to park for free in the Dyer Street lot were enjoying an unexpected gratuity that had not been contracted for by the parties. Accordingly it was not a matter suitable for arbitration, derivative from the alliance agreement.

For the reasons stated, the appeal is denied and dismissed, the order of the Superior Court vacating the arbitration award is affirmed, and the papers of the case are remanded to the Superior Court.