DECISION
This civil action is a petition filed on September 8, 1995, in which the petitioner Rhode Island Brotherhood of Correctional Officers (RIBCO) seeks an order of the Court confirming an arbitration award pursuant to G.L. 1956 (Reenactment of 1995) § 28-9-17. On August 28, 1995 an arbitrator sustained RIBCO's grievance that the defendant State of Rhode Island Department of Corrections (State DOC) had unilaterally changed the Collective Bargaining Agreement (CBA) between the parties regarding time off to employees to attend to union business. He ordered that the State DOC (1) cease and desist from enforcing the unilateral changes, (2) restore paid Union leave lost to Union time, restore leave balances and pay to individuals who used such leave time, or who lost pay while on Union business during the imposition of the unilateral changes. On September 18, 1995 the State DOC moved for a stay of the award pending hearing on its motion to vacate the award filed on the same date. The motion for stay was passed on October 6, 1995. In the course of filing briefs RIBCO moved that this Court recuse itself because of an appearance of impropriety arising out of the potentiality of this trial justice's candidacy for appointment by the Governor to the Supreme Court. The motion was denied on December 13, 1995.
I.
The operative facts which gave rise to the grievance and arbitration are not in substantial dispute. The epicenter of the controversy lies in the implementation of Article XV, entitled, "Brotherhood Committee", of the CBA.
In pertinent part paragraph 15.1 reads as follows:
 Designated Brotherhood members or elected officials shall be granted time off with pay during working hours to investigate and seek to settle grievances, to attend hearings, meetings, conferences relating to union business and contract negotiations with State officials. Such time shall be granted with the approval of the Departmental director or his designee, which said approval shall not be unreasonably withheld. The following procedure will be used:
 (a) A written request shall be made for such time off requested on the forms provided by the Department to request time off pursuant to this Article.
 (b) Union representatives seeking time off shall give advance or written notice of at least three (3) days to permit the State to find replacements if necessary.
 (c) In those cases where immediate presence of a union official is required to resolve a grievance or attend to other matters requiring immediate action, the request for time off shall be given without delay by phone, in person, or by other means according to the situation requirements. If the State finds that immediate action is required, which determination shall not be unreasonably declined, the request for time off shall be granted in sufficient time to permit the Union representative to go where his presence may be required and take the action deemed necessary. A written form shall be submitted as soon as possible thereafter to permit the State to complete records showing that the request was made and action taken thereon.
 (d) Where the union gives at least three (3) days advance notice, the State shall grant or deny the request within two days of its receipt.
 (e) Should the presence of a union representative become necessary at a hearing, meeting, conference, arbitration or contract negotiation session, under conditions that he is unable to give advance notice of at least three days, he shall make a written request as soon as he learns that his presence is necessary. If the State determines that the request should be granted, which determination shall not be unreasonably withheld, the applicant seeking the time shall be notified immediately of the approval. Should the State decide to deny the time requested, immediate reply shall also be made in writing for the denial."
The arbitrator found from the evidence before him:
 "The amount of time made available to union representatives pursuant to Articles 15 and 35 had increased by mutual agreement
progressively from 1972 until the present based on increases in membership, grievances and arbitrations (Union Exhibit 10). Under current Department of Corrections Administration since January 1991, a minimum of four (Union Exhibit 9B) and a maximum of five (Union Exhibit 9A) union officials were released on a daily basis to perform full time union business. This authorized leave was in addition to authorized leave for other union members to perform such varied union business as steward meetings and training, executive board and membership meetings and meetings of the negotiating committees in preparation for negotiations. (Emphasis supplied.)
 "In January 1994, an agreement between the Director of the Department and the Brotherhood limited full time leave to 160 hours per week. Testimony was uncontroverted that Brotherhood representatives took part in meetings with the Director on this subject and agreed to the reduction." (Emphasis in original.)
The State DOC did not controvert any of this evidence at the arbitration hearing and does not dispute the facts as found by the arbitrator.
The CBA contains a "past practices" provision in paragraph 35.5, which reads as follows:
 "Except as otherwise expressly provided herein, all privileges and benefits which employees hereto enjoyed shall be maintained and continued by the State during the term of this Agreement."
The arbitrator assigned two functions to this provision. First, he used it as a guide to interpret paragraph 15.1. Second, he accorded it independent standing to embody the side agreements regarding the Union time off contractual provisions as part of the CBA itself.
On March 27, 1995 the Governor published a memorandum containing an executive order to the directors of several executive departments of state government, including State DOC, on the subject of "Union Work Performed on State Time." That memorandum set out a number of conditions under which state employees would be granted time off with pay to conduct union business in accordance with pertinent CBA's. Implementing instructions from administrative officers promptly followed in May 1995. RIBCO contended and the arbitrator agreed that the requirements of these executive directives substantially varied from the practises in the State DOC regarding union time off.
II.
The State DOC argues that the arbitrator's award manifestly disregards the express terms of the CBA. It argues, in effect, that paragraph 15.1 provides exclusively for discrete periods of time off and prohibits full periods of time off for Union officers. Since these conclusions depend on a construction of the express terms of the paragraph, and since other inferences are plausible, this Court must accept the arbitrator's reading that this paragraph is amenable to construction by past practices.
The Court also can accept the arbitrator's well-founded conclusion that, until the Governor attempted to change the practices in effect as of his memorandum, or executive order, of March 27, 1995, those past practices had met the criteria announced in R.I. Court Reporters Alliance vs. State,591 A.2d 376, 378-79 (R.I. 1991) for "past practices". Such being the case the long-standing agreement by the State DOC to grant "full-time" Union business leave to certain employees has independent contractual status between the parties established by paragraph 35.5. The arbitrator properly concluded that the elimination of that leave is the subject of negotiation and not a matter of management rights preserved by paragraph 4.1. As in paragraphs 15.1 and 35.5, the express language of paragraph 4.1 contains no direct reference to full-time Union business leave. Management rights are recognized there, "except as limited, abridged, or relinquished by the terms and provisions" of the CBA, which, of course, includes paragraph 15.1 and established past practises.
III.
If the only issue raised by the State DOC's motion to vacate the award was whether the arbitrator properly found that past practices authorized 160 hours per week of Union business leave to four employees under the CBA, this case would now be at an end. The State DOC, however, argues that allowing full time off to these employees violates a clearly articulated State policy embodied in an unequivocal enactment of the General Assembly. It says that, consequently, the award must be vacated because it violates the public policy of this State and thereby exceeds the power of the arbitrator.
G.L. 1956 (1995 Reenactment) § 28-7-13(3)(iii) declares that it shall be an unfair labor practice for an employer:
 To dominate or interfere with the formation, existence, or administration of any employee organization or association, agency, or plan which exists in whole or in part for the purpose of dealing with employers concerning terms or conditions of employment, labor disputes, or grievances, or to contribute financial or other support to any such organization, by any means, including, but not limited to, the following:
 * * *
 (iii) By compensating any employee or individual for services performed in behalf of any employee organization or association, agency or plan, or by donating free services, equipment, materials, office or meeting space, or any thing else of value for the use of any employee organization or association, agency, or plan; provided that an employer shall not be prohibited from permitting employees to confer with him or her during working hours without loss of time or pay.
The State DOC argues that the last "no docking" provision may apply only to employees engaged in the adjustment of "discrete grievances or to attend to specific matters by conferring with the employer." Petitioner's Memorandum of Law, p. 7. The "past practice" agreement relied on by RIBCO, and the arbitrator, they say, permits employees to devote all their working hours as Union business time-off. Accordingly, these employees are in fact, according to the petitioner's argument, union officials paid for full-time employment on Union business by the employer. That, they say is a clear-cut violation of the letter and spirit of § 28-7-13(3)(iii).
RIBCO contends, first, that the "illegality" of the past practise should have been raised as an issue of substantive arbitrability either by way of objection to the submission to arbitration or during the arbitration under G.L. § 28-9-13. It says that in effect the State DOC is claiming that Article XV and paragraph 35.5 are void, and as such are not arbitrable. The State DOC correctly counters that it is the arbitrator's enforcement of a "past practise" which they allege violates public policy and not the presence of these provisions in the CBA.
Next, RIBCO argues, correctly, that the initial enforcement of § 28-7-13, generally, is exclusively within the original jurisdiction of the State Labor Relations Board, to which this Court must defer. See Warwick School Committee v. WarwickTeachers Union, 613 A.2d 1273, 1276 (R.I. 1992).[1] The State DOC is not, however, seeking to enforce § 28-7-13(3)(iii) directly against anyone, let alone itself. It does argue that the section expresses a clearly discernible public policy of the State, expressed in an Act of the General Assembly, against the full-time paid employment of union officials by the State.
Read narrowly, of course, the last proviso clause of §28-7-13(3)(iii) would seem to permit only a limited amount of paid union business leave. Paragraph 15.1 appears to permit paid time off for much more than "to confer with (the employer) during working hours," as permitted in the section. The analogous sections of the Federal Labor Management Relations Act, to which the Court is directed by the parties use far different permissive language. For example, § 302(c)(1) [28 U.S.C. § 186(c)(1); permits payments by an employer "to any officer or employee of a labor organization, who is also an employee . . . of such employer, as compensation for, or by reason of his service as an employee of such employer."
In applying the provisions of the Federal Act the Courts of the United States correctly consider the relationship between the employer, on the one hand, and the Union official, on the other. Thus, the issue resolved in cases like NLRB v. BASF WyandotteCorp., 798 F.2d 849 (5th Cir. 1986) and BASF Wyandotte Corp. v.Local 227, International Chemical Workers Union, AFL-CIO,791 F.2d 1046 (2nd Cir. 1986) is whether or not a company-paid union official is or is not a bona fide employee of the employer. The Court in this case must confront a different issue.
The issue here is whether the 1994 agreement of the director and the "past practise", as found and applied by the arbitrator, violates the public policy protected by § 28-7-13, See W. R.Grace and Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983), or whether the provision contractually abdicates a statutory obligation of the director,See Vose v. R.I. Brotherhood of Correctional Officers,587 A.2d 913, 915 (R.I. 1991), or whether the CBA, as interpreted by the arbitrator, contravenes a statute of the State, See Power v. Cityof Providence, 582 A.2d 895, 900 (R.I. 1990).
The answer to the questions presented in this case does not entirely depend on whether or not the union officers are bona fide employees of the State DOC. The answer to the questions before this Court depends on a construction of § 28-7-13(3)(iii). According to § 28-7-2(e) this provision must be "liberally construed for the accomplishment" of the purposes set forth in § 28-7-2(d), unchanged since 1941:
 In the interpretation and application of this chapter and otherwise, it is hereby declared to be the public policy of the state to encourage the practice and procedure of collective bargaining, and to protect employees in the exercise of full freedom of association, self organization, and designation of representatives of their own choosing for the purposes of collective bargaining, or other mutual aid and protection, free from the interference, restraint, or coercion of their employers.
The purpose of the proviso clause in § 28-7-13(3)(iii) would be frustrated if it were to be narrowly construed. The proviso avoids an otherwise perverse effect of §28-7-13(3)(iii). Without the proviso, union officials, who are also employees, would be economically discouraged from representing the collective bargaining unit and its members in their ongoing relations with the employer, if they were required to forego their wages. Without the proviso, the statutory purposes of the State Act, as a whole, to smooth labor management relations generally would be frustrated by requiring employees to choose between making a living and representing their co-workers during work time.
It is equally clear that the purpose of § 28-7-13(3), and its sub-parts, is to prohibit the control and domination by the employer of captive company unions, once more frequent than today. Nothing in the record of this case or in the history of the relations between these parties so much as hints that the State DOC dominates or interferes with RIBCO, irrespective of how much paid time-off RIBCO officers enjoy for the carrying on of union business. The whole thrust of the State DOC's position is completely contrariwise. It is the State DOC which traditionally claims domination and interference by RIBCO. See e.g., Vose v.R.I. Brotherhood, supra. The Court is hard-pressed to accept at face value the State DOC's solicitude for any risk its employees face from a tainted and subservient representation from RIBCO, which this section was designed to prevent.
Under the circumstances, this Court construes the proviso clause to include all of the union activities engaged in by members of the bargaining unit, including its officers, as they are described in paragraph 15.1 of the CBA, and as may be included by past arbitration awards, as well as those past practices preserved by paragraph 35.5 of the CBA, irrespective of the amount of such time relative to the employee's usual working hours. As so construed, the award of the arbitrator neither contravenes the statute, nor violates any public policy protected by the statute, nor derogates from any statutory obligation of the director.
If the State DOC believes it has been too generous in the time-off it has allowed certain members of the bargaining unit, relative to their regular work time, a plain and readily available remedy is available at renegotiation time, since, once a past practise is established as part of a CBA, it becomes subject to collective bargaining like any other provision.
Accordingly, the award of the arbitrator will be confirmed. The petition to vacate the award will be denied.
The respondent will present an order and judgment for entry on five-days notice to the petitioner.
[1] An arbitrable dispute has been held not to be the proper subject to an unfair labor practise complaint in another context in Lime Rock Fire District v. R.I. State Labor Relations Board, No. 94-548-M.P., slip op. at 6-8. Only time will tell whether arbitrable contractual disputes can give rise to complaints before the State Labor Relations Board.