**TOWN OF SMITHFIELD**

v.

**LOCAL 2050 et al.**

**No. 96–255–Appeal.**

Supreme Court of Rhode Island.

Feb. 12, 1998.

---

**2.** G.L.1909, tit. 8, ch. 46, § 15. The notice requirement in this former version is identical to that contained in G.L.1956 § 45–15–8.

Margaret L. Hogan, Providence, Thomas S. Hogan, South Kingstown, for Plaintiff.

James M. Green, Daniel Kemp Kinder, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case came before us on the appeal of the town of Smithfield (Smithfield) from a Superior Court final judgment confirming an arbitrator's award in favor of Local No.2050 (union), the International Association of Fire Fighters.

The union and Smithfield were parties to a collective bargaining agreement, which was in effect from July 1, 1993, until June 30, 1994. On April 22, 1994, the union filed a grievance against Smithfield, alleging that the town had violated article I, sections 2 and 5, of the agreement by not permitting paid leave to union officers in order to permit them to prepare for an arbitration proceeding. The relevant sections of the collective bargaining agreement provided:

"*ARTICLE I*

*Section 2: Union Security*

d) Local 2050 officers, up to two (2) in number, may be allowed time off to attend meetings of the State Fire Fighters Association (not to exceed two (2) per year), the annual meeting of the National Convention of Fire Fighter's Association and the Rhode Island State Association of Fire Fighters, and for the purpose of attending seminars as approved by the Chief of the Fire Department and relating to fire fighting services and activities, without loss of pay and without the requirement to make up such time.

e) All employees who are officers of Local 2050 or who are appointed by Local 2050 as members of the collective bargaining negotiating team (said team not to exceed three (3) in number) shall be allowed time off for official union business in negotiations or conferences with the Town Council or the Town Council's designee, the Rhode Island Department of Labor, or the State Labor Relations Board, with pay and without the requirement to make up said time.

\* \* \*

*Section 5: Management Rights*

Any and all rights concerned with the management and operation of the Fire Department are exclusively that of the Town unless otherwise provided by the terms of this agreement. The Town has the authority to adopt rules for the operation of the Department and the conduct of its employees in the performance of their duties, provided such rules are not in conflict with the provisions of the Agreement

nor with the applicable laws and with the duly established past practices of the parties as defined by law."

The grievance was denied by both the chief of the fire department and the town of Smithfield. That denial was based on the fact that the collective bargaining agreement did not provide for paid leave to members of the collective bargaining negotiating team to *prepare* for arbitrations, only to attend and take part in arbitration proceedings. The union challenged the denial of its grievance, which resulted in the grievance being submitted to arbitration on May 2, 1995.

On August 18, 1995, an arbitrator issued a decision in favor of the union. He determined that the collective bargaining agreement contained language that permitted the incorporation of past practices into the agreement and that the evidence before him demonstrated the existence of a past practice of permitting paid leave to collective bargaining union negotiating team members in order to prepare for arbitration as well as for other union business.

The union filed a petition to confirm the arbitration award in the Superior Court. At the same time, Smithfield filed a petition to vacate the arbitration award. The trial justice, although concluding that the arbitrator's decision "strain[ed] reason," nonetheless granted the petition to confirm the award because he believed that the arbitrator's award could only be vacated if there had been a "showing of bias, corruption or mental incapacity on the part of the arbitrator," which, he determined, had not been shown. Smithfield appealed.

We conclude that pursuant to G.L.1956 § 28–9–18 and our decision in *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376 (R.I.1991), the question of past practices on the basis of the record before us was not an arbitrable issue. In *Alliance* we specifically addressed the issue of past practices and held with respect thereto that "the contract must contain a past-practice provision or a savings clause that evidences the mutual intent of the parties to establish these benefits as enforceable past practices. Otherwise these past practices cannot serve as the basis for arbitration." 591 A.2d at 378. The con-

tract before us contains no such sufficiently clear past-practice provision. The arbitrator nevertheless based his decision upon the existence of a past practice. The arbitrator in so doing exceeded his powers and the award must be vacated pursuant to § 28–9–18(a)(2).

We note that in *Alliance* the collective bargaining agreement at issue in that case defined "grievance" as "any difference or dispute between the State and the Alliance with respect to the interpretation, application or violation of any of the provisions of this Agreement." 591 A.2d at 378. That definition, we determined, was a narrow one, limiting "arbitrable grievances to those claims that derive from the agreement" itself, and that actions not specifically provided for in the collective bargaining agreement were not subject to the arbitrable grievance procedure. *Id.* Here too the collective bargaining agreement concerned limits the arbitrable issues to those specifically set forth in the collective bargaining agreement itself. In addition, article XVI, section 1, step 4, of the collective bargaining agreement between Smithfield and the firefighters' union provided that "the Arbitrator shall not have the power to add to or subtract from the terms and conditions of this Agreement." That provision, like the one in *Alliance*, was narrowly tailored and served to limit arbitrable issues to those specifically derived from the agreement itself. Thus, absent an unambiguous past-practice provision in the agreement, the arbitrator clearly lacked any authority to conclude that an isolated occurrence constituted a course of conduct that should be incorporated into the agreement as a past practice.

■ After examining the collective bargaining agreement before us, we conclude that it contains no sufficiently clear past-practice provision as required by *Alliance*. Article I, section 5, quoted earlier, falls far short of constituting such a provision and any reference to past practices contained in that section, it should be noted, refers to "Management Rights" and merely serves to limit the authority of the town of Smithfield to adopt rules concerning the "operation of the [Fire] Department and the conduct of its employees in the performance of their

duties" that would conflict with any previously established past practice.[1] Notably, that reference was specifically placed within the section dealing primarily with management rights and was not contained in a separate section, like the alleged past practice provision we encountered in *State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94*, 692 A.2d 318 (R.I. 1997).[2] That fact clearly suggests that the reference to past practices was not intended as a general acceptance of any past practices between the union and the town, but was merely a limitation on the rights of management. Thus, since the collective bargaining agreement in question contains no express past practice provision providing for paid leave to union members to prepare for arbitration proceedings, that issue was not an arbitrable issue and was improperly referred to the arbitrator.

In *Alliance* we set forth the five criteria that must be met before we will find a mutual intent between the parties to a collective bargaining agreement to adopt a course of previous conduct as a past practice. There must be "(1) clarity and consistency throughout the course of conduct, (2) longevity and repetition creating a consistent pattern of behavior, (3) acceptance of the practice by both parties, (4) mutuality in the inception or application of the practice, and (5) consideration of the underlying circumstances giving rise to the practice." *Alliance*, 591 A.2d at 379. In the instant case there was no competent evidence before the arbitrator of acceptance of the alleged past practice by both parties, a necessary element of mutual intent. Thus he could not reasonably and rationally conclude that there was an established past practice between the town and the union regarding the awarding of paid leave to prepare for arbitrations.

We also note in the record before us the complete absence of any evidence to show that the town of Smithfield was ever aware of or that it in any other way ratified the alleged past practice of permitting paid leave to union officers to prepare for arbitrations. The limited evidence before the arbitrator established only that a request for paid leave to prepare for arbitration had been first made to the fire department shift captains. Those shift captains were all union members, two of whom were also presidents of the union during the relevant period. Thus, they certainly could not be considered to be representatives of the town with authority to ratify paid leave on behalf of the town. Those same shift captains were later required, in turn, to report the paid leave requests to the aide of the chief of the Smithfield fire department, who by coincidence also happened to be a union member and certainly once again not a representative of the town. We note also the complete absence of any evidence of written documentation regarding the previous grant of paid leave to union members for preparing for arbitrations having been submitted to the arbitrator or which he in any manner acknowledged. Consequently, only the fire chief's aide and the shift captains, all union members, could profess to have had any actual knowledge of any past practice of granting paid leave to union officers to prepare for arbitration. The arbitrator nonetheless concluded from that barren record that at least one of the persons serving as chief of the fire department during the years that the

1. That conclusion is supported by the fact that at an interest arbitration in 1985–1986, the arbitration panel refused to include in the management rights section the union's proposed reference to past practices because it was deemed to be too vague. Although that reference was later included in the collective bargaining agreement between the union and Smithfield, as evidenced by the version of the agreement at issue here, presumably it was eventually adopted because it acted only to limit the town's power to adopt rules and was, therefore, a more specifically tailored version than the union's first proposal. As a result it did not suffer from the same deformity of vagueness as the earlier proposal.

2. That section provided that "[e]xcept as otherwise expressly provided * * *, all privileges and benefits which employees have hitherto enjoyed shall be maintained and continued by the [S]tate during the term of this agreement." *State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94*, 692 A.2d 318, 320 n. 6 (R.I.1997); *but see Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, No. 96–240–A., slip op. at 11, —— A.2d ——, —— (R.I. 1998)(holding that the above-quoted "privileges and benefits" language does not evidence the parties' intent to establish mere past practices as contractually protected privileges and benefits).

practice was allegedly occurring must have known of the practice and that the failure of any one of those chiefs to reject the practice amounted to implicit approval by the town. The arbitrator found it "incredible that during this time period the Chiefs of the Department had no knowledge and did not condone this practice." That irrational conclusion finds no support in any evidence before the arbitrator.

The arbitrator could only offer in support of his past-practice conclusion the irrational implication of implied knowledge that he imputed to at least one of the fire chiefs, and from which he then concluded his finding that the town had knowledge of the practice of paid leave to union members to prepare for arbitration simply has no rational basis.

We believe that the evidence presented to the arbitrator should have clearly alerted him to the fact that the town in the past had explicitly rejected such a past practice. At an arbitration proceeding in 1985–1986, that very issue of paid released time to prepare for contract negotiations was specifically addressed and rejected by an arbitration panel. The language contained in the collective bargaining agreement that is now in contention was written into the contract that is before us to prevent recurrence of that same past-practices claim. Thus, it should have been abundantly clear to the arbitrator that the past practice at issue here had been previously specifically addressed and rejected. The arbitrator, while acknowledging that rejection, obviously found it to be irrelevant. Such a conclusion defies reason. Accordingly, the arbitrator's decision lacks any rational basis.

 We conclude, therefore, that the arbitrator's award was clearly imperfect and that he exceeded his authority. As a result, the town's motion to vacate the award should have been granted by the trial justice, pursuant to § 28–9–18. We observe that the trial justice himself was of the same mindset as this Court with respect to the propriety of the arbitrator's decision. The trial justice stated that "[i]t is hard, hard to understand how a grievance arbitrator can find that there was a past practice where that very practice was denied in interest arbitration."

Even though the trial justice was correct in noting that the arbitrator's decision must be a "passably plausible interpretation of the collective bargaining agreement," that did not mean, as the trial justice apparently misunderstood, that there had to be a "showing of bias, corruption, or mental incompetence on the part of the arbitrator" in order for an arbitrator's decision not to be passably plausible. In *Westcott Construction Corp. v. City of Cranston*, 586 A.2d 542, 543 (R.I.1991), we implicitly held that an arbitrator's decision that is not "passably plausible" is the same as "a completely irrational result."

> "It is well settled that our authority to overturn an arbitration award is limited to those situations in which there has been a manifest disregard of a contractual provision or a completely irrational result. *City of Pawtucket v. Pawtucket Lodge No. 4, F.O.P.*, 545 A.2d 499, 503 (R.I.1988). * * * '[A]s long as the award draws its essence from the contract and is based upon a "passably plausible" interpretation of the contract,' we shall uphold it. *Id.*" 586 A.2d at 543.

Since the trial justice found that the arbitrator's decision was "hard, hard to understand" and that it "strain[ed] reason," he clearly erred in then concluding that it was a "passably plausible" result. What the comments of the trial justice indicate, and what we have concluded in this opinion, is that the arbitrator's decision in this matter was far from a passably plausible interpretation of the contract and was instead just completely irrational. As a result, no showing of bias, mental incompetence, or corruption was additionally necessary in order for the trial justice to have denied the union's motion to confirm the arbitrator's award and to grant the town's motion to vacate.

Accordingly, for all the foregoing reasons, the town of Smithfield's appeal is sustained, and the Superior Court judgment appealed from is reversed. The decision of the arbitrator is vacated, and the papers in this case are remanded to the Superior Court.