## TOWN OF NORTH PROVIDENCE

v.

## LOCAL 2334 INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL–CIO.

### No. 99–52–Appeal.

Supreme Court of Rhode Island.

Dec. 15, 2000.

John J. DeSimone, for plaintiff.

William E. O'Gara, Providence, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

### OPINION

PER CURIAM.

This case came before the Court for oral argument on November 8, 2000, pursuant to an order directing both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

On April 30, 1997, Local 2334 International Association of Fire Fighters (Union) presented a grievance to the Town of North Providence (Town) based on the Town's failure to include holiday pay when calculating longevity compensation. The grievance specifically referenced Article X, Section 1, of the Collective Bargaining Agreement (CBA) between the Town and the Union. Article X provides, in pertinent part, as follows:

"*Section 1. Longevity*

A. Upon completion of five (5) years of service measured from the date of appointment, an employee shall receive an additional three (3%) percent of their base salary for longevity.

B. All employees who have been employed for eight (8) years measured from the date of employment by the Town shall receive, in addition to Sub–Section A of this Article and to the pay provided for herein, an additional three percent (3%) per annum of their gross pay for longevity.

C. Effective July 1, 1988, all employees who have been employed for fifteen (15) years measured from the date of employment by the Town shall receive, in addition to Sub–Section A. and B. of this Article and to the pay provided for herein, an additional two (2%) percent per annum of their gross pay for longevity.

D. Longevity payments shall be received in a lump sum, in a separate check * * *."

For many years, the parties have had Article X in their CBA with precisely the same language quoted above. The parties have mutually interpreted Article X to exclude holiday pay from gross pay in the calculation of longevity pay. However, the Union, in its grievance, alleged that the Town had violated Article X by failing to include holiday pay in gross pay for the calculation of longevity. The Town asserted that it had never included holiday pay in that calculation and, thus, had not violated the CBA.

The parties were unable to resolve the grievance. Consequently, on October 10, 1997, the Union filed a demand for arbitration with the American Arbitration Association. The Union sought to have the Town directed to adjust the method of computation to conform with the contract and to repay affected firefighters a total of $24,059.57. On February 14, 1998, arbitrator Orlando A. Andreoni (arbitrator) issued an opinion and award in favor of the Union. The arbitrator found that "the [Town] and the Union, by past practice, [had] misinterpreted Article X of the Collective Bargaining Agreement." He further found "that Gross Pay as set forth in Article X should include Holiday pay in so far as longevity is concerned." As a result, the arbitrator ordered the Town to include holiday pay in the calculation of longevity from and after April 30, 1997.

Thereafter, the Town filed a motion to vacate the arbitration award with the Superior Court. Both parties submitted briefs on the issue. After hearing oral arguments, a justice of the Superior Court denied the Town's motion and confirmed the arbitrator's award. The Town appealed from the judgment. On appeal, the Town argues that the arbitrator exceeded his authority by reaching a decision that was irrational and that was in conflict with the parties' mutual interpretation of the CBA. Consequently, the Town argues that the Superior Court justice erred by declining to vacate the arbitrator's award.

■ Pursuant to G.L.1956 § 28–9–18(a)(2), a reviewing court must vacate an arbitration award when the arbitrator exceeded his or her powers. Section 28–9–18(a)(2) provides in pertinent part:

"Grounds for vacating award—(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:

* * *

(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made."

However, both the Rhode Island and the United States Supreme Court have long recognized that the authority of the judiciary to "review * * * the merits of an arbitration award is extremely limited." *State Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94*, 692 A.2d 318, 322 (R.I.1997); *see United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1407 (1960) ("[t]he function of the court is very limited when the parties have agreed to submit all questions of contract

interpretation to the arbitrator"). "[G]enerally '[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the [arbitration] award will be upheld.' " *See Providence Teachers Union v. Providence School Board*, 725 A.2d 282, 283 (R.I.1999) (quoting *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I.1998)). Thus, it is only when an arbitration award fails to embody even a "passably plausible" interpretation of the contract that it must be struck down by the Court upon review. *See Town of Smithfield v.. Local 2050*, 707 A.2d 260, 264 (R.I.1998) (quoting *Westcott Construction Corp. v. City of Cranston*, 586 A.2d 542, 543 (R.I.1991)) (" '[A]s long as the award draws its essence from the contract and is based upon a "passably plausible" interpretation of the contract,' we shall uphold it."); *accord Town of Coventry v. Turco*, 574 A.2d 143, 146 (R.I. 1990); *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978).

■ The arbitrator's award here was "passably plausible" because it was consistent with the plain language of Article X, which provides that longevity compensation for firefighters with eight or more years of service will be calculated based on "gross pay." There is no language in Article X that restricts or defines what "gross pay" includes or excludes. Indeed, "gross income" is defined by Black's Law Dictionary as *all* income from *whatever* source derived." (Emphasis added.) Black's Law Dictionary 703 (6th ed.1990). Given that words in a contract should be given their plain, ordinary, and usual meanings, *Johnson v. Western National Life Insurance Co.*, 641 A.2d 47 (R.I. 1994), the arbitrator could plausibly have determined that, in the absence of restrictive language in the CBA, "gross pay" included holiday pay. *See Silva v. Stanley–Bostitch*, 651 A.2d 1222 (R.I.1994) (overtime compensation would not be included when calculating workers' compensation benefits where statute was amended and specifically excluded overtime from

"gross wages"); *McKenna v. Turnquist Lumber Co.*, 511 A.2d 298 (R.I.1986) (workers' compensation statute that provided benefits would be calculated on "gross wages" required inclusion of overtime compensation). Because Article X uses different language in different sections (that is, "gross pay" versus "base pay"), it is "passably plausible" and, hence, completely rational for the arbitrator to have concluded that these different terms were not intended to be synonymous (that is, "gross pay" would include holiday pay, while "base pay" would not).

■ The Town additionally argues that because the Union did not grieve the Town's violation of Article X or the misinterpretation earlier (indeed, both parties had mutually misinterpreted the CBA), the arbitrator exceeded his authority. However, this Court has expressly stated that past practice may not form the basis to prevent enforcement of an award, unless the contract itself contains a "sufficiently clear past-practice provision." *Town of Smithfield*, 707 A.2d at 262 (citing *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376, 378 (R.I.1991)). This was not the case here. Moreover,

> "[t]he clear majority rule, as reflected in the reported decisions and the published commentary, is the traditional view that in the event of conflict between the language of the agreement and past practice, the language of the agreement, which represents the most direct and best evidence of the parties' intentions, must govern." Ira F. Jaffe, *Past Practice, Maintenance of Benefits, and Zipper Clauses*, 1 Labor and Employment Arbitration, § 10.03[3] at 10–24 (Tim Bornstein et al. eds., 1998).

Thus, because the arbitrator's award was grounded in the essence of the CBA and because there was no clear past-practice provision contained therein, the arbitrator did not exceed his authority and the Superior Court was correct in affirming his judgment.

For these reasons, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.