DECISION
The plaintiff, State of Rhode Island, has moved to vacate an arbitration award that found it violated the Wage Benefits Comparability Letter of Understanding ("the parity letter") in its collective bargaining agreement ("the agreement") with the defendant, Rhode Island Employment Security Alliance, Local 401 ("Local 401"). The arbitrator determined that the State violated Local 401's parity letter by not offering it the same increased benefits that another union previously received pursuant to its own arbitration award. As a remedy, the arbitrator required the State provide the increased benefits to Local 401. In its motion to vacate, the State argues that the arbitrator exceeded his authority in making his award and that he so imperfectly executed his powers that no mutual, final, and definite award was made. The State also argues that the award does not draw its essence from the agreement and is irrational.
 Procedural History
In making his award, the arbitrator had to consider and interpret, among other things, the parties' parity letter, which provides:
 "It is understood by RIESA, Local 401, that in situations where there is an improvement in wages or benefits negotiated by the Department of Administration with other unionized groups which are contingent on concessions, RIESA, Local 401 will make the decision whether to accept the benefit(s) and be bound by the concessions, or elect not to accept the improved wages and/or benefits.
 In situations where there are improvements in wages and/or benefits with no concessions attached thereto, RIESA, Local 401, will receive the wages and/or benefit improvement(s)."
Simply stated, certain "other unionized groups" (among them the Rhode Island Probation and Parole Association ("RIPPA")) received an improvement in benefits, not conditioned upon concessions, as a result of arbitration. That arbitration was in turn the end result of RIPPA's grieving, based upon its own parity letter, from an earlier contractual agreement that provided yet another "unionized group" (The Rhode Island Alliance of Social Service Employees, Local 580 ("Local 580")) with an improvement in benefits, though it is unclear whether such were conditioned on concessions.
In any event, Local 401 asserted, and was believed by the arbitrator, that it first learned of the improved benefits when it heard about the arbitration award to RIPPA. It would thus appear that Local 401 might have had two grievance options based upon its parity letter: (1) grieve from the original increased benefits obtained by contract by Local 508 or (2) grieve from the award of the benefits as a result of arbitration to RIPPA. Indeed, the State's grievance as stated in the arbitrator's decision-"[t]he State violated the contract when it failed to grant improvements in wages and benefits to Local 401 bargaining unit members that it granted to members of other unionized groups"-appears broad enough to encompass both. Whether Local 401 was for some reason barred from grieving from the original contractual award to Local 580 is unclear. But in any event, the arbitrator limited the scope of the grievance, stating that "the only issue that will be discussed under the merits section of this award will be whether the State violated the [Local] 401's Wage and Comparability Letter of Understanding by not offering Local 401 employees the same benefit obtained by RIPPA bargaining unit members in its arbitration." Since the parties do not contest the arbitrator's framing of the issue, the court similarly limits its review to the propriety of the award in the context of the parity letter and the RIPPA arbitration award, to the merits of which the court now turns.
 Discussion
The Superior Court typically refrains from reviewing the merits of a previously arbitrated labor dispute. However, a trial justice must vacate an award "[w]here the arbitrator . . . exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made." G.L. 1956 § 28-9-18(a)(2). An arbitrator exceeds his or her powers under § 28-9-18(a)(2) if the award fails to "`draw its essence' from the agreement, if it was not based upon a `passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." Woonsocket Teachers' Guild, Local 951, AFT v.Woonsocket School Committee, 770 A.2d 834, 836-37 (R.I. 2001). "An arbitrator's award does `draw its essence from the collective bargaining agreement' so long as the interpretation can in some rational manner be derived from the agreement, `viewed in the light of its language, its context, and any other indicia of the parties' intention.'" Cedar RapidsAss'n of Fire Fighters, Local 11 v. City of Cedar Rapids, 574 N.W.2d 313, 318 (Iowa 1998); see also Jacinto v. Egan, 120 R.I. 907, 913-14,391 A.2d 1173, 1176 (1978) (wherein our Supreme Court found that the "decision of the arbitrator `draws its essence' from the contract and is sufficiently `grounded in the contract' to be within the scope of his authority").
Moreover, in Westcott Construction Corp. v. City of Cranston,586 A.2d 542, 543 (R.I. 1991), our Supreme Court "implicitly held that an arbitrator's decision that is not `passably plausible' is the same as `a completely irrational result,'" Town of Smithfield v. Local 2050,707 A.2d 260, 264 (R.I. 1998). Thus, it has been held that an "arbitrator's award was not `passably plausible' because it was wholly inconsistent with the plain language of the CBA; the arbitrator based her decision on a limitation contained nowhere within the CBA." WoonsocketTeachers' Guild, Local 951, AFT v. Woonsocket School Committee,770 A.2d 834, 839 (R.I. 2001). Furthermore, our Supreme Court has emphasized that irrationality or a manifest disregard of the law requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law. For example, a manifest disregard of the law might be present when arbitrators understand and correctly state the law, but proceed to disregard it. Parties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law. In fact, awards premised on "clearly erroneous" interpretations of a contract have been affirmed where the result was rationally based upon the contract. See Purvis Systems, Inc. v. American Systems Corp., 2002 WL 120539 at *3, No. 1999-290-Appeal (filed Jan. 24, 2002). In sum, "[a]s long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." Id.
The State makes much of its assertion that the award here is inconsistent with the awards of other arbitrators. Even assuming that to be true, and even assuming those other awards are in some sense better, the ultimate questions here still remain unanswered: does this award fail to "draw its essence" from the parity letter in the agreement, is it based upon a "passably plausible" interpretation of the parity letter, does it manifestly disregard a contractual provision, or does it reach an irrational result? Without dismissing the relevance of other awards generally, see, e.g., Rhode Island Public Telecommunications Authorityv. Rhode Island State Labor Relations Board, 650 A.2d 479 (R.I. 1994), the court is simply not convinced that the existence of contrary conclusions and awards is of great import in this case as they provide no assistance in answering the above questions.
Next, the State's "concern that any grievance arbitration settlement may become the subject of a parity claim by any union that has a parity letter" is overstated. First, if the parity letters can be reasonably read to so allow, that is no fault of the arbitrator. Also, as with all arbitration awards, this award stands alone and is not binding on other arbitrators. And finally, the State is free to revisit the terms of any parity letters it has with the various unions during renegotiation.
The State also asserts that the award is irrational because the arbitrator "referred to increased benefits that were ordered given to RIPPA members" while "the clear and unambiguous language of the Parity Letter refers to negotiated increases." Be that as it may, the arbitrator ultimately concluded that:
 "In the final analysis, the State agreed to provide the same contract benefits to RIPPA and Local 401. It also gave both Local 401 and RIPPA a further commitment that if it gave another union more, Local 401 and RIPPA would also get the additional benefit(s). It then agreed with RIPPA to allow an arbitrator to make an equitable ruling to determine whether RIPPA's benefits should be increased. It now has to live up to its parity agreement with Local 401 and give it the increased benefits ordered by the RIPPA Arbitrator."
Without meaning to be overly simplistic, the court determines that the arbitrator essentially found that the RIPPA arbitration was a "situation" which resulted in an award to another "unionized group" "where there are improvements in wages and/or benefits with no concessions attached thereto." As such, he ordered that "Local 401 will receive the wages and/or benefit improvement(s)."
After reviewing the arbitrator's award, the court cannot say that it fails to "draw its essence" from the parity letter in the agreement, that it is not based upon a "passably plausible" interpretation of the parity letter, that it manifestly disregards a contractual provision, or that it reaches an irrational result. To the contrary, the arbitrator made extensive reference to the parity letter and determined that the "situations" referred to in the parity letter were broad enough to include the award of increased benefits to another union after arbitration. While the award is not the only one that could be reasonably made, it is a passably plausible one drawn from the parity letter. As such, the motion to vacate is denied.