DECISION
This matter comes before the Court on petition by plaintiff, Town of Charlestown ("Charlestown" or "Town"), filed on September 12, 2007, to stay the arbitration demand filed by defendant, Teamsters Local Union No. 251, International Brotherhood of Teamsters ("Local 251" or "the Union"), before the American Arbitration Association ("AAA").
Jurisdiction is pursuant to G.L. 1956 § 28-9-13(2). The statute provides that a party who has been served with an intention by another party to conduct arbitration pursuant to the provisions of a contract, and who has not participated in any arbitration proceedings or been served with an application to compel arbitration under § 28-9-5, may, by motion for a stay of arbitration in this Court, challenge "the making of the contract or submission of the failure to comply therewith."Sch. Comm. of the City of Pawtucket v. Pawtucket Teachers Alliance AFTLocal 930, 120 R.I. 810, 812 n. 1, 390 A.2d 386 (1978).
 Facts and Travel
Charlestown is a public corporate body and Local 251 is a labor organization which is certified to collectively bargain on behalf of certain town employees pursuant to G.L. 1956 §§ 28-9.4-1 — 19 *Page 2 
(Municipal Employees Arbitration Act). Charlestown and Local 251 are parties to a collective bargaining agreement effective July 1, 2005 through June 30, 2008 ("CBA"), which governs the relationship between the parties and the terms of employment of various municipal employees.
The CBA provides in part that
 "the Union is the exclusive bargaining agent for all permanent, active, full-time employees of the Town in the following categories: Landfill Foreman, Landfill Loader Operator, Landfill Laborer, Public Works Foreman, Drivers/Laborers Class I, Drivers/Laborers Class II, Town Hall Custodian, Animal Control Officer, Building Secretary, Police Secretary, Planning 
Recreation Secretary, Deputy Town Clerk, Clerk (Town Clerk's Office), Clerk (Tax Collector's Office), Senior Clerk (Tax Assessor's Office), Treasurer's Assistant. Expressly excluded from this bargaining unit are certified teachers and employees of the School Department, all police officers up to and including the rank of Chief, police dispatchers, the Director of Public Works, the Recreation and Parks Director, the Town Building Official, Tax Assessor, Town Treasurer, Tax Collector the Town Planner, the Administrative Secretary to the Town Administrator, the Town Clerk, the Town Administrator, all department heads, professional, supervisory, managerial and confidential employees, seasonal, casual and temporary employees, and all other employees now or hereafter excluded pursuant to state law. . . ." CBA § 2.1 (Recognition and Union Security clause).
The CBA also provides specific procedures for filing of grievances and submitting disagreements to arbitration. See CBA §§ 5.1, 6.1. A grievance is defined as "any difference or dispute between the Town and the Union or between the Town and any employee with respect to the interpretation, application or violation of any of the provisions of this Agreement." CBA § 5.1. The CBA further provides that "[i]f a grievance has not been settled satisfactorily pursuant to the grievance procedure, it may be submitted to arbitration before an arbitrator appointed by the [AAA] pursuant to its rules by either party upon written notice to the other party and demand for arbitrator submitted to AAA. . . ." CBA § 6.1. *Page 3 
The CBA also contains a "Job Bidding" provision, which requires that "[j]ob openings are to be posted on the Union bulletin board and open to all qualified members of the bargaining unit before being advertised to the public." CBA § 8.5. The provision additionally discusses the role of seniority, other factors to be considered and the Town's level of discretion. Id.
On or about July 1, 2007, Charlestown created a new full-time job classification entitled Clerical Assistant, Public Works Department. Charlestown appointed Bonnie Langlois to the position. Langlois had previously held the position on a part-time basis. The position was not posted or subject to "job bidding" by union members. Thereafter, on or about July 12, 2007, Local 251 filed a grievance with the Town stating that the new position should have been subject to the "job bidding" requirements of the CBA § 8.5. The Town denied the grievance on the basis that the issue was not subject to CBA or its grievance procedures because the new position was not within the bargaining unit of the CBA. Subsequently, on July 26, 2007, Local 251 filed a demand for arbitration with the AAA. Upon notice, Charlestown objected to the jurisdiction of the AAA to arbitrate the dispute. The AAA informed Charlestown that it would proceed with the administration of the arbitration absent an agreement by the parties or a court order staying the arbitration. On September 12, 2007, Charlestown petitioned this Court for an order to permanently stay arbitration.
 Analysis
The parties' arguments may be briefly summarized. Charlestown alleges that this matter is one which is not arbitrable because the parties did not agree to arbitrate this dispute in the CBA. Charlestown argues that the positions listed in CBA § 2.1, the "Recognition and Union Security," are "explicit and exhaustive." Therefore, in order to include the new position within the protections of the CBA, as Charlestown alleges Local 251 is seeking to do, the arbitrator *Page 4 
would have to "add to, depart from, alter or amend" the CBA, which is expressly beyond an arbitrator's authority. See CBA § 6.1. Charlestown further alleges that Local 251's reliance on CBA § 8.1 pertaining to "Job Bidding" is misplaced because the new position is not a "qualified member of the bargaining unit," which the Town argues only includes those classifications which are listed in CBA § 2.1. Charlestown lastly argues that all matters upon which the CBA is silent are matters to which the Town has not surrendered its discretion, citing CBA § 4.1 which states that "except as specifically relinquished by the express terms of this Agreement, all rights to manage, direct or supervise the Town's operations and its employees are vested solely in the Town." Charlestown argues that it has neither "specifically" nor "by express terms" surrendered the right to create new positions not contained within the bargaining unit and to fill such positions without adhering to the conditions imposed by the CBA with respect to posting or job bidding.
Local 251 argues that where there is an arbitration clause there is a presumption in favor of arbitration in the absence of an express provision which indicates that the dispute was intended to be excluded, which Local 251 asserts does not exist here. Further, the Union argues that when there is doubt regarding arbitration, courts should rule in favor of arbitrability. Local 251 argues that Charlestown has "unilaterally" determined that the position falls outside the CBA and such a determination should be subjected to arbitration. The Union emphasizes that the parties' definition of grievance includes any dispute as to the interpretation or application of the CBA.See CBA § 5.1. Thus, Local 251 contends that the dispute falls within the arbitrator's authority to interpret the CBA to determine whether the new position should be accreted to the union. Local 251 also argues the new position should be considered part of the CBA because it is not a position which is expressly excluded in the CBA, thereby leaving an arbitrable issue. *Page 5 
Local 251 asserts that by entering into the CBA, Charlestown relinquished its right to create and fill new full time positions in the Public Works Department without adhering to the CBA's job bidding requirements. See CBA § 4.1. Therefore, Local 251 argues that the Town has not rebutted the presumption in favor of arbitration, and accordingly, there are questions of fact and contractual interpretation surrounding this dispute which are within the arbitrator's powers to decide.
In examining the arguments of both parties, the Court would note that both parties have conceded that the law favors arbitration. Both the Rhode Island Supreme Court and U.S. Supreme Court have enunciated the basic principals that a party can "not be required to submit to arbitration any dispute which he has not agreed to submit," but that when uncertainty exists the policy is "in favor of resolving any doubt in favor of arbitration." Sch. Comm. of N. Kingstown v. Crouch,808 A.2d 1074, 1078 (R.I. 2002) (quoting AT T Technologies, Inc. v. Commc'nWorkers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 1418,89 L. Ed. 2d 648, 655 (1986); Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983)).
Charlestown argues that because the CBA is silent regarding the new position, then it has not expressly agreed to arbitrate or surrender its hiring discretion. Yet, Charlestown's arguments are too narrowly focused upon the new position itself, when the core issue before the Court is arbitrability and not interpretation and applicability.
In R.I. Court Reporters Alliance v. R.I., the Rhode Island Supreme Court reviewed the arbitrability of a dispute between the court reporters' union and the State, when the State ceased to provide free parking to the employees. 591 A.2d 376, 376-77 (R.I. 1991) There, the Court held, as had the U.S. Supreme Court previously, that "a court should rule in favor of submitting a dispute to arbitration unless the arbitration clause of the collective bargaining agreement cannot *Page 6 be interpreted to include the asserted dispute, and that all doubts should be resolved in favor of arbitration." Id. at 377 (emphasis added) (citing United Steelworkers of America v. Warrior GulfNavigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1353,4 L. Ed. 2d 1409, 1417-18 (1960)). In R.I. Court Reporters' Alliance, free parking was neither a provision within their CBA agreement, nor was there a provision dealing with enforceable past practices, the ground upon which the Union based its argument. Id. at 378. Yet here, unlike in R.I. CourtReporters' Alliance, the CBA contains a provision which expressly deals with "job bidding," which is the subject of the infraction alleged by the Union. See CBA § 8.1.
Charlestown argues that since the position "Clerical Assistant, Public Works Department" is not explicitly contained within CBA, it is therefore not subject to the CBA requirements of job bidding, grievance or arbitration. Yet, for the Court to agree with such a proposition, it would require this Court to go beyond its narrowly defined powers with respect to determining arbitrability. The Rhode Island Supreme Court has stated that "[w]hen the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal . . . [t]he courts, therefore have no business weighing the merits of the grievance."R.I. Court Reporters' Alliance, 591 A.2d at 378 (quoting UnitedSteelworkers of Am. v. Am. Manufacturing Co., 363 U.S. 564, 568-69,80 S. Ct. 1343, 1346-7, 4 L. Ed. 2d 1403, 1407 (1960)). Asking this Court to conclude whether the "categories" of positions which are articulated in CBA § 2.1 is meant to be illustrative or exclusive would be requiring this Court to do just that, interpret the CBA and thereby weigh the merits of the grievance. The power to interpret and determine applicability of the CBA is granted exclusively *Page 7 
to an arbitrator pursuant to the grievance and arbitration provisions of the CBA. See CBA §§ 5.1, 6.1.
The CBA explicitly defines grievance as "any difference or dispute between the Town and the Union or between the Town and any employee with respect to the interpretation, application or violation of any of the provisions of this Agreement." CBA § 5.1 (emphasis added). Arbitration is then required when a grievance has not been settled through the grievance process. CBA § 6.1. The CBA is therefore not silent, as Charlestown contends, with respect to when an arbitrator has the authority to interpret the CBA or define its applicability. Further, interpreting the applicability of the CBA to the newly created position is not asking the arbitrator to amend or add to the CBA, as prohibited by the CBA in § 6.1. Rather, Local 251 is seeking to have an arbitrator do what is expressly provided within the CBA, to determine questions of interpretation, application or violation of the CBA with regard to the newly created position.
The Rhode Island Supreme Court further enunciated that in determining whether to uphold an arbitrators award, so "long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority" and the court's review must end. R.I. Court Reporters' Alliance,591 A.2d at 378 (quoting Jacinto v. Egan 120 R.I. 907, 912, 391 A.2d 1173,1176 (1978) quoting language from United Steelworkers of Am. v.Enterprise Wheel . Car Corp., 363 U.S. 593, 597 80 S. Ct. 1358, 1361,4 L. Ed. 2d 1424, 1428 (1960)). The same principal can be seen as applicable here with respect to determining arbitrability. Here, one could plausibly interpret the categories articulated in the Recognition Clause, CBA § 2.1, to be just that — categories — which were not meant to be an explicit list of job titles. Further, CBA Exhibit "A" which articulates the salaries of various union positions, contains the position of "DPW Driver/Laborer." It would not be implausible to *Page 8 
conclude that such a description includes the position of Clerical Assistant in the Public Works Department. Thus, here, there are plausible interpretations which could include the new position, Clerical Assistant, Department of Public Works, with the articulated positions within the Recognition Clause, thus, subjecting disputes with regard to the position to an arbitrator's interpretation as to whether the position is subject to the terms of the CBA and if failing to provide Union job bidding for the position violated the agreement. See CBA § 2.1.[1]
In United Steelworkers of Am. v. Warrior Gulf Navigation Co., the U.S. Supreme Court stated that where there is an arbitration provision, in the "absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."363 U.S. 574, 584-85, 80 S. Ct. 1347, 1354, 4 L. Ed. 1409 (1960). The Court further stated that this was particularly applicable where the "exclusion clause is vague and the arbitration clause is quite broad."Id. at 585. Here, the CBA contains no express provision excluding each and every newly created position from the CBA. The CBA's inclusion and exclusion of non-exhaustive lists of positions makes the inclusion of new positions ambiguous at best and by no means expressly excluded.[2]
Although it is not for this Court to determine whether the CBA contemplated every newly created position as part of the excluded or included positions, it can be plausibly argued that the new position herein — Clerical Assistant, Public works Department — is not expressly excluded by the terms of the CBA. *Page 9 
 Conclusion
Based on all of the foregoing, the Court finds that the dispute between Charlestown and Local 251 is subject to arbitration based upon the terms of the CBA and in the absence of express evidence to the contrary. The Court further finds that it would be beyond the power of this Court to determine whether the new position is included or excluded under the CBA with respect to the job bidding provisions. Charlestown's petition to stay arbitration is therefore denied, and the parties shall submit their disputes to arbitration. Counsel for Local 251 shall submit an Order in accordance with the Court's decision within 10 days from issuance of this Decision.
[1] By stating that an interpretation of the CBA is plausible, the Court is in no way weighing upon the merits of the dispute which rests within the power of the arbitrator.
[2] Recall that along with the "categories" which the CBA explicitly includes, the CBA states that positions "[e]xpressly excluded from this bargaining unit are certified teachers and employees of the School Department, all police officers up to and including the rank of Chief, police dispatchers, the Director of Public Works, the Recreation and Parks Director, the Town Building Official, Tax Assessor, Town Treasurer, Tax Collector, the Town Planner, the Administrative Secretary to the Town Administrator, the Town Clerk, the Town Administrator, all department heads, professional, supervisory, managerial and confidential employees, seasonal, causal and temporary employees, and all other employees now or hereafter excluded pursuant to state law." CBA § 2.1.